# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| MICHAEL LEE, derivatively on behalf of DRIVEN BRANDS HOLDINGS INC., | ) ) ) | Case No. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| JONATHAN FITZPATRICK, DANIEL RIVERA, NEAL ARONSON, CATHY HALLIGAN, DAMIEN HARMON, CHAD HUME, TIMOTHY JOHNSON, RICK PUCKETT, KAREN STROUP, PETER SWINBURN, MICHAEL THOMPSON, JOSE TOMÁS, MICHAEL BELAND, MICHAEL F. DIAMOND, GARY W. FERRERA, and REBECCA FONDELL, | ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants, | ) ) | |
| -and- | ) ) | |
| DRIVEN BRANDS HOLDINGS INC., a Delaware Corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

Plaintiff Michael Lee ("Plaintiff"), derivatively on behalf of Driven Brands Holdings Inc. ("Driven Brands" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *City of Hollywood Police Officers' Retirement System v. Driven Brands Holdings Inc. et*

*al.* (W.D.N.C Case 3:26-cv-00283) (the "Securities Class Action"); (iii) corporate governance documents available on the Company's website; and (iv) other publicly available information.

**NATURE OF THE ACTION**

1. This is a stockholder derivative action brought by Plaintiff, a stockholder of Driven Brands, on behalf of the Company against the Defendants. This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least May 3, 2023, to February 24, 2026 (the "Relevant Time Period"). During that time the Defendants (as defined herein) caused or allowed Driven Brands to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2. Driven Brands claims to be the largest provider of automotive services in North America. The Company operates through three segments: Take 5, Franchise Brands, and Car Wash. Across these divisions, it offers a range of services, including paint, collision, glass, and repair work, along with routine services such as oil changes, car washes, and general maintenance.

3. Leading up to and during the Class Period, Driven Brands consistently assured investors that it was carrying out a steady and dependable business strategy focused on growth and cash generation. The Company emphasized this claimed identity to investors, stating: "Driven is Growth and Cash."

4. This action alleges that the Company hid material weaknesses in its internal controls over financial reporting, resulting in the misstatement of key financial metrics for nearly three years. Consequently, Driven Brands misled investors regarding its operational and financial health, as its financial statements were materially inaccurate from fiscal year 2023 through the first three quarters of fiscal year 2025.

5.      The truth came to light before markets opened on February 25, 2026, when Driven Brands revealed that its financial statements for fiscal years 2023 and 2024, along with the first three quarters of fiscal year 2025, contained "material errors." The Company further advised investors that these financial statements "should not be relied upon" and would need to be restated. In addition, Driven Brands disclosed that it had "identified material weaknesses in the Company's internal control over financial reporting" and determined that its "internal control over financial reporting and disclosure controls and procedures were not effective as of December 27, 2025."

6.      Driven Brands reported the following "primary categories of errors":

*Lease Adjustments*

Certain errors were identified relating to the completeness and accuracy of recording leases. These errors primarily impact right of use assets and right of use liabilities recorded in the consolidated balance sheet as of December 28, 2024 and September 27, 2025.

*Cash Adjustments*

Certain errors were identified relating to unreconciled differences for cash accounts primarily originating in fiscal years 2023 and earlier. The errors affect the opening and ending cash balances and operating cash flows in the consolidated statement of cash flows and result in overstatements of cash and revenue and understatement of selling, general and administrative expense in the consolidated statement of operations for fiscal years 2023 and 2024.

*Expense Classification*

During fiscal years 2023 and 2024, within operating expenses certain supply and other expenses were presented as companyoperated store expenses. This error resulted in company-operated store expenses to be overstated for fiscal years 2023 and 2024 and an equal understatement of supply and other expenses in the corresponding periods. This error did not result in any change in total operating expenses.

*Other Errors*

In addition, other errors were identified that primarily relate to fiscal years 2023 or 2024 related to the income tax provision, supply and other revenue,

fixed assets, cloud computing, lease cash application, and balance sheet and income statement misclassifications, as well as inappropriately recognized revenue in our ATI business primarily related to fiscal year 2025. The impact of these errors and the lease adjustments, cash adjustments, and expense classification described above will be reflected in the Company's Annual Report on Form 10-K for the fiscal year 2025.

7. Before markets opened that same day, Driven Brands also disclosed that the release of its fourth-quarter fiscal year 2025 financial results, along with its related earnings call, would be postponed.

8. On this news, Driven Brands' common stock price declined by $5.01 per share, or approximately 30%, closing at $11.60 per share on February 25, 2026.

9. Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements in breach of their fiduciary duties to the Company.

## PARTIES

### A. Plaintiff

10. Plaintiff Michael Lee is a current shareholder of Driven Brands and has continuously held Driven Brands stock during all times relevant hereto and is committed to retaining Driven Brands shares through the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of Driven Brands and its shareholders in enforcing its rights.

### B. Nominal Defendant

11. Nominal Defendant Driven Brands is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 440 S Church St Ste 700, Charlotte, North Carolina, 28202. Driven Brands common stock trades on the Nasdaq Global Select Market under the ticker symbol "DRVN."

4

## C. Individual Defendants

12. Defendant Jonathan Fitzpatrick served as President and CEO of the Company from 2012 until May of 2025. He has been a director of the Company since 2018, and Chairman of the Board since May of 2025.

13. Defendant Daniel Rivera has served as the President, CEO, and director of the Company since May 2025.

14. Defendant Neal Aronson has been a director of the Company since 2020. He served as the Chairman of the Board until May 2025.

15. Defendant Cathy Halligan has been a director of the Company since 2020.

16. Defendants Damien Harmon has been a director of the Company since January 2024.

17. Defendant Chad Hume has been a director of the Company since 2020.

18. Defendant Timothy Johnson has been a director of the Company since January 2026.

19. Defendant Rick Puckett has been a director of the Company since 2020.

20. Defendant Karen Stroup has been a director of the Company since 2020.

21. Defendant Peter Swinburn has been a director of the Company since 2020.

22. Defendant Michael Thompson has been a director of the Company since 2020.

23. Defendant Jose Tomás has been a director of the Company since 2022.

24. Defendants Fitzpatrick, Rivera, Aronson, Halligan, Harmon, Hume, Johnson, Puckett, Stroup, Swinburn, Thompson, and Tomás are herein referred to as "Director Defendants."

25. Defendant Michael Beland served as CFO of the Company from May 2024 to August 2024 and the Company's Chief Accounting Officer ("CAO") from 2021 to January 2025.

26.     Defendant Gary W. Ferrera served as Executive Vice President ("EVP") and CFO of the Company from 2023 until May 2024.

27.     Defendant Michael F. Diamond has served as the Company's EVP and CFO since August 2024.

28.     Defendant Rebecca Fondell has served as Company's CAO since May 9, 2025,

29.     Defendants Fitzpatrick, Rivera, Beland, Ferrera, Diamond, and Fondell are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

31.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

32.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

33.     Venue is proper in this court under 28 U.S.C. § 1391, because Driven Brands is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A.      Company Background**

34.     Driven Brands "claims to be the largest automotive services provider in North America, offering services such as paint, collision, glass, repair, car wash, oil changes, and maintenance. The Company operates through three reportable segments: "Take 5," "Franchise Brands," and "Car Wash."

35.     In the first quarter of fiscal year 2025, Driven Brands reorganized its operating segments, previously consisting of Maintenance, Car Wash, Paint, Collision & Glass, and Platform Services, purportedly to simplify the reporting structure and increase transparency for investors. Following this reorganization, the Company reported three segments: "Take 5," "Franchise Brands," and "Car Wash."

36.     The Take 5 segment is primarily composed of company-and franchise-operated Take 5 Oil Change businesses, including oil change and maintenance services. Take 5 segment revenue also includes franchise royalties and fees, as well as supply and other product sales.

37.     The Franchise Brands segment primarily consists of a collection of franchise brands, including CARSTAR, Meineke, Maaco, and 1-800 Radiator. Its revenue also includes smaller brands and services offered to both retail and commercial customers, such as commercial fleet operators and insurance carriers.

38.     The Car Wash segment primarily consists of express-style conveyor car wash services for both retail and commercial customers.

39.     Throughout the Relevant Time Period, Driven Brands consistently promoted that it was executing a steady and reliable growth strategy and presented to investors its purported identity: "Driven is Growth and Cash."

**B.    Driven Brands's False and Misleading Statements**

40.    On May 3, 2023, before markets opened, Driven Brands issued a press release announcing its financial results for the first quarter of fiscal year 2023, ending April 1, 2023. In that release, the Company reported, among other items, the following financial results:

**First Quarter 2023 Highlights**

Comparisons are first quarter of 2023 ended April 1, 2023, versus first quarter of 2022 ended March 26, 2022 unless otherwise noted

• Revenue increased 20 percent to $562.5 million, driven by same-store sales and net store growth.

• Consolidated same-store sales increased 9 percent.

• The Company added 59 net new stores during the quarter.

• Net Income decreased 14 percent to $29.7 million or $0.17 per diluted share.

• Adjusted Net Income[] decreased 11 percent to $42.3 million or $0.25 per diluted share

• Adjusted EBITDA[] increased 8 percent to $127.8 million

41.    On May 9, 2023, Driven Brands filed its Quarterly Report on Form 10-Q (the "Q1 2023 Form 10-Q"), signed by Fitzpatrick and Beland.

42.    Additionally, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), Fitzpatrick signed and filed certifications alongside the Q1 2023 Form 10-Q, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

43.    The Q1 2023 Form 10-Q provided further detail regarding the Company's financial results for the first quarter of fiscal year 2023, including the following cash metrics:

| | |
|---|---:|
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (34,014) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 190,841 |
| Cash included in advertising fund assets, restricted, end of period | 35,126 |
| Restricted cash, end of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 226,759 |

44. The Q1 2023 Form 10-Q reported first quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $243.409 million and $112.328 million, respectively.

45. The Q1 2023 Form 10-Q further stated that there were "no changes in our internal control over financial reporting that occurred during the three months ended April 1, 2023, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

46. On August 9, 2023, Driven Brands filed its Quarterly Report on Form 10-Q for the second quarter of fiscal year 2023, ending July 1, 2023 (the "Q2 2023 Form 10-Q"), which was signed by Fitzpatrick and Beland.

47. Pursuant to SOX, Fitzpatrick and Ferrera also signed and filed certifications with the Q2 2023 Form 10-Q, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

48. The Q2 2023 Form 10-Q stated:

9

**Q2 2023 Three Months Ended Highlights and Key Performance Indicators**

(*as compared to same period in the prior year, unless otherwise noted*)

• Revenue increased 19% to $607 million, driven by same-store sales and net store growth.

• Consolidated same-store sales increased 8%.

• The Company added 74 net new stores during the quarter.

• Net Income increased to $38 million or $0.22 per diluted share in the current quarter compared to a Net Loss of $57 million or ($0.34) per diluted share in the prior year period. Adjusted Net Income "(non-GAAP)" decreased 18% to $49 million or $0.29 per diluted share.

• Adjusted EBITDA "(non-GAAP)" increased 12% to $151 million.

49. The Q2 2023 Form 10-Q also reported cash metrics for the six months ended July 1, 2023:

| | |
|---|---:|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (9,302) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 260,773 |
| Cash and cash equivalents, end of period | 212,123 |
| Cash included in advertising fund assets, restricted, end of period | 38,691 |
| Restricted cash, end of period | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 251,471 |

50.     The Q2 2023 Form 10-Q reported second quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $257.040 million and $96.815 million, respectively.

51.     The Q2 2023 Form 10-Q further stated that there "were no changes in our internal control over financial reporting that occurred during . . . [the] quarter ended July 1, 2023, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

52.     On November 9, 2023, Driven Brands filed its Quarterly Report on Form 10-Q for the third quarter of fiscal year 2023, ended September 30, 2023 (the "Q3 2023 Form 10-Q"), which was signed by Fitzpatrick and Beland.

53.     Pursuant to SOX, Fitzpatrick and Ferrera signed and filed certifications along with the Q3 2023 Form 10-Q, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

54.     The Q3 2023 Form 10-Q reported that third quarter revenue "increased 12% [year-over-year] to $581 million, driven by same-store sales and net store growth." It also provided cash metrics for the nine months ended September 30, 2023:

| | |
|---|---|
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (959) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 211,280 |
| Cash included in advertising fund assets, restricted, end of period | 47,877 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 259,814 |

55.     The Q3 2023 Form 10-Q reported third quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $262.282 million and $123.012 million, respectively.

56.     The Q3 2023 Form 10-Q further stated that there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended September 30, 2023, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

57.     On February 28, 2024, Driven Brands filed an amended Annual Report on Form 10-K/A for fiscal year 2023, ending December 30, 2023 (the "2023 Form 10-K/A"), which was signed by Beland.

58.     Pursuant to SOX, Fitzpatrick and Ferrera also signed and filed certifications with the 2023 Form 10-K/A, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

59.     The 2023 Form 10-K/A provided:

|  | | Year Ended | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| (in thousands, except per share amounts) | | December 30, 2023 | | December 31, 2022 | | December 25, 2021 |
| Net revenue: | | | | | | |
| Franchise royalties and fees | $ | 190,367 | $ | 171,734 | $ | 144,413 |
| Company-operated store sales | | 1,526,353 | | 1,324,408 | | 843,646 |
| Independently-operated store sales | | 196,395 | | 195,157 | | 204,246 |
| Advertising contributions | | 98,850 | | 87,750 | | 75,599 |
| Supply and other revenue | | 292,064 | | 254,145 | | 199,376 |
| **Total net revenue** | | 2,304,029 | | 2,033,194 | | 1,467,280 |

60.     The 2023 Form 10-K/A reported the following cash metrics for fiscal year 2023:

| | |
| --- | --- |
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (45,057) |
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 176,522 |
| Cash included in advertising fund assets, restricted, end of period | 38,537 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 215,716 |

61.     The 2023 Form 10-K/A reported fiscal year 2023 "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of approximately $1.004 billion and $443.112 million, respectively.

62. On May 2, 2024, Driven Brands filed a Current Report on Form 8-K stating that Ferrera "notified the Company of his intent to resign from the Company to pursue a professional opportunity at a privately held company," and that he agreed to "continue serving as Executive Vice President and Chief Financial Officer until the filing of the Company's quarterly report on Form 10-Q for the quarter ended March 30, 2024."

63. On May 8, 2024, Driven Brands filed its Quarterly Report on Form 10-Q for the first quarter of fiscal year 2024, ending March 30, 2024 (the "Q1 2024 Form 10-Q"), which was signed by Fitzpatrick and Beland.

64. Pursuant to SOX, Fitzpatrick and Ferrera also signed and filed certifications with the Q1 2024 Form 10-Q, attesting to the accuracy of Driven Brands' financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

65. The Q1 2024 Form 10-Q reported that first quarter net revenue "increased 2% [year-over-year] to $572 million, driven by same store sales and net store growth." It also provided the following first quarter cash metrics:

| | |
|---|---:|
| **Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted** | (6,084) |
| Cash and cash equivalents, beginning of period | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 |
| Restricted cash, beginning of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 215,716 |
| Cash and cash equivalents, end of period | 165,513 |
| Cash included in advertising fund assets, restricted, end of period | 43,462 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 209,632 |

66. The Q1 2024 Form 10-Q reported first quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of approximately $242.053 million and $116.402 million, respectively.

67. The Q1 2024 Form 10-Q further stated that there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended March 30, 2024 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

68. On August 8, 2024, Driven Brands filed its Quarterly Report on Form 10-Q for the second quarter of fiscal year 2024, ending June 29, 2024 (the "Q2 2024 Form 10-Q"), which was signed by Fitzpatrick and Beland.

69. Pursuant to SOX, Fitzpatrick and Beland signed and filed certifications with the Q2 2024 Form 10-Q, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

70. The Q2 2024 Form 10-Q reported that second quarter net revenue "increased 1% [year-over-year] to $612 million, driven by higher product and service revenue due to an increase in system-wide sales and net new store growth." It also provided cash metrics for the six months ended June 29, 2024:

| | |
|---|---|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (30,480) |
| Cash and cash equivalents, beginning of period | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 |
| Restricted cash, beginning of period | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 215,716 |
| Cash and cash equivalents, end of period | 148,814 |
| Cash included in advertising fund assets, restricted, end of period | 32,008 |
| Restricted cash, end of period | 4,414 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 185,236 |

71. The Q2 2024 Form 10-Q also reported second quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $254.174 million and $121.123 million, respectively.

72. Additionally, the Q2 2024 Form 10-Q stated that there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended June 29, 2024, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

73.     The Q2 2024 Form 10-Q also reported second quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $254.174 million and $121.123 million, respectively.

74.     Additionally, the Q2 2024 Form 10-Q stated that there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended June 29, 2024, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

75.     On November 7, 2024, Driven Brands filed its Quarterly Report on Form 10-Q for the third quarter of fiscal year 2024, ending September 28, 2024 (the "Q3 2024 Form 10-Q"), which was signed by Fitzpatrick and Beland.

76.     Pursuant to SOX, Fitzpatrick and Diamond also signed and filed certifications with the Q3 2024 Form 10-Q, attesting to the accuracy of Driven Brands' financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

77.     The Q3 2024 Form 10-Q reported that third quarter net revenue "increased 2% [year-over-year] to $592 million, driven by higher product and service revenue due to an increase in system-wide sales, net new store growth," among other factors. It also provided cash metrics for the nine months ended September 28, 2024:

| | |
|---|---:|
| Cash and cash equivalents, beginning of period | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 |
| Restricted cash, beginning of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 215,716 |
| Cash and cash equivalents, end of period | 204,181 |
| Cash included in advertising fund assets, restricted, end of period | 40,465 |
| Restricted cash, end of period | 4,414 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 249,060 |

78.     The Q3 2024 Form 10-Q also reported third quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $242.073 million and $149.766 million, respectively.

79.     Additionally, the Q3 2024 Form 10-Q stated that, "with the exception of the implementation" of a new enterprise resource planning (ERP) system, there were "no changes in our internal control over financial reporting that occurred during the . . . quarter ended September 28, 2024, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

80.     On December 12, 2025, Driven Brands filed a Current Report on Form 8-K stating that Beland had "informed the Company of his intent to resign from his position, effective January 3, 2025, to pursue another opportunity."

81.     On February 25, 2025, the Company announced that Fitzpatrick "informed the Company of his intent to step down as President and CEO effective May 9, 2025."

82.     On February 26, 2025, Driven Brands filed its Annual Report on Form 10-K for fiscal year 2024, ending December 28, 2024 (the "2024 Form 10-K"), which was signed by Fitzpatrick and Diamond.

83.     Pursuant to SOX, Fitzpatrick and Diamond also signed and filed certifications with the 2024 Form 10-K, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

84.     The 2024 Form 10-K provided:

| (in thousands) | Year Ended | | | |
| | December 28, 2024 | % of Net Revenues | December 30, 2023 | % of Net Revenues |
|---|---|---|---|---|
| Franchise royalties and fees | $  188,634 | 8.1 % | $  190,367 | 8.3 % |
| Company-operated store sales | 1,544,932 | 66.0 % | 1,526,353 | 66.2 % |
| Independently-operated store sales | 212,396 | 9.1 % | 196,395 | 8.5 % |
| Advertising fund contributions | 101,316 | 4.3 % | 98,850 | 4.3 % |
| Supply and other revenue | 292,310 | 12.5 % | 292,064 | 12.7 % |
| Total net revenue | $ 2,339,588 | 100.0 % | $ 2,304,029 | 100.0 % |

85.     The 2024 Form 10-K provided the following:

| | | | |
|---|---|---|---|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (6,474) | (45,057) | (302,019) |
| Cash and cash equivalents, beginning of period | 176,522 | 227,110 | 523,414 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 | 32,871 | 38,586 |
| Restricted cash, beginning of period | 657 | 792 | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 215,716 | 260,773 | 562,792 |
| Cash and cash equivalents, end of period | 169,954 | 176,522 | 227,110 |
| Cash included in advertising fund assets, restricted, end of period | 38,930 | 38,537 | 32,871 |
| Restricted cash, end of period | 358 | 657 | 792 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 209,242 | $ 215,716 | $ 260,773 |

86.     The 2024 Form 10-K reported fiscal year 2024 "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $993.090 million and $554.775 million, respectively.

87.     The 2024 Form 10-K also reported "[o]perating lease right-of-use assets" of approximately $1.370 billion for fiscal year 2024 and approximately $1.389 billion for fiscal year 2023.

88.     On May 8, 2025, Driven Brands filed its Quarterly Report on Form 10-Q for the first quarter of fiscal year 2025, ending March 29, 2025 (the "Q1 2025 Form 10-Q"), which was signed by Fitzpatrick and Diamond.

89.     Pursuant to SOX, Fitzpatrick and Diamond signed and filed certifications with the Q1 2025 Form 10-Q, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

90.     The Q1 2025 Form 10-Q reported that first quarter net revenue "increased 7% [year-over-year] to $516.2 million, driven by company-operated store revenue, primarily due to net new store growth within our Take 5 segment and same store sales growth within our Take 5 and Car Wash segments." It also provided the f first quarter cash metrics:

| | | |
|---|---:|---:|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (15,099) | (6,084) |
| Cash and cash equivalents, beginning of period | 169,954 | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 | 38,537 |
| Restricted cash, beginning of period | 358 | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 209,242 | 215,716 |
| Cash and cash equivalents, end of period | 155,584 | 165,513 |
| Cash included in advertising fund assets, restricted, end of period | 38,227 | 43,462 |
| Restricted cash, end of period | 332 | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 194,143 | $ 209,632 |

91.     The Q1 2025 Form 10-Q also reported first quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $181.866 million and $143.052 million, respectively.

92.     Additionally, the Q1 2025 Form 10-Q stated that there "were no changes in our internal control over financial reporting . . . that occurred during the . . . quarter ended March 29, 2025, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

93. On August 7, 2025, Driven Brands filed its Quarterly Report on Form 10-Q for the second quarter of fiscal year 2025, ending June 28, 2025 (the "Q2 2025 Form 10-Q"), which was signed by Rivera and Fondell.

94. Pursuant to SOX, Rivera and Diamond also signed and filed certifications with the Q2 2025 Form 10-Q, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

95. The Q2 2025 Form 10-Q reported that second quarter net revenue "increased 6% [year-over-year] to $551 million, driven by company-operated store sales, primarily due to net new store growth and same store sales growth within our Take 5 segment and independently operated store sales due to same store sales growth within our Car Wash segment." It also provided cash metrics for the six months ended June 28, 2025:

| | | |
|---|---:|---:|
| Net change in cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted | (3,339) | (30,480) |
| Cash and cash equivalents, beginning of period | 169,954 | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 | 38,537 |
| Restricted cash, beginning of period | 358 | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 209,242 | 215,716 |
| Cash and cash equivalents, end of period | 166,131 | 148,814 |
| Cash included in advertising fund assets, restricted, end of period | 39,438 | 32,008 |
| Restricted cash, end of period | 334 | 4,414 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 205,903 | $ 185,236 |

96. The Q2 2025 Form 10-Q also reported second quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $190.396 million and $183.118 million, respectively.

97. Additionally, the Q2 2025 Form 10-Q stated that there "were no changes in our internal control over financial reporting . . . that occurred during the . . . quarter ended June 28, 2025, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

98. On November 5, 2025, Driven Brands filed its Quarterly Report on Form 10-Q for the third quarter of fiscal year 2025, ending September 27, 2025 (the "Q3 2025 Form 10-Q"), which was signed by Rivera and Fondell.

99. Pursuant to SOX, Rivera and Diamond also signed and filed certifications with the Q3 2025 Form 10-Q, attesting to the accuracy of Driven Brands's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

100. The Q3 2025 Form 10-Q reported that third quarter "[n]et revenue was $536 million for the three months ended September 27, 2025, compared to $502 million for the three months ended September 28, 2024." It also provided cash metrics for the nine months ended September 27, 2025:

| | |
|---|---:|
| Cash and cash equivalents, beginning of period | 169,954 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 |
| Restricted cash, beginning of period | 358 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 209,242 |
| Cash and cash equivalents, end of period | 162,028 |
| Cash included in advertising fund assets, restricted, end of period | 41,361 |
| Restricted cash, end of period | 335 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 203,724 |

101.  The Q3 2025 Form 10-Q also reported third quarter "[c]ompany-operated store expenses" and "[s]elling, general, and administrative expenses" of $193,129 million and $145.177 million, respectively.

102.  The Q3 2025 Form 10-Q further stated that there "were no changes in our internal control over financial reporting . . . that occurred during the . . . quarter ended September 27, 2025, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

103.  The foregoing statements were materially false and/or misleading because they omitted material adverse facts regarding the Company's business, operations, and prospects, rendering those statements misleading in light of the circumstances in which they were made. Specifically, Defendants failed to disclose that: (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material

errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### C. The Truth is Revealed

104. The truth regarding the Company's operational and financial condition was disclosed before markets opened on February 25, 2026. On that date, Driven Brands filed a Current Report on Form 8-K stating that it had "concluded there were material errors" in its financial statements for fiscal years 2023 and 2024, as well as all quarterly and year-to-date periods in fiscal year 2024 and the first three quarterly and year-to-date periods of fiscal year 2025. As a result, the Company disclosed that those financial statements "should not be relied upon" and would need to be restated.

105. In that same Current Report on Form 8-K, Driven Brands outlined "the primary categories of errors that have been identified in connection with the preparation" of its annual report for fiscal year 2025:

*Lease Adjustments*

Certain errors were identified relating to the completeness and accuracy of recording leases. These errors primarily impact right of use assets and right of use liabilities recorded in the consolidated balance sheet as of December 28, 2024 and September 27, 2025.

*Cash Adjustments*

Certain errors were identified relating to unreconciled differences for cash accounts primarily originating in fiscal years 2023 and earlier. The errors affect the opening and ending cash balances and operating cash flows in the consolidated statement of cash flows and result in overstatements of cash and revenue and understatement of selling, general and administrative expense in the consolidated statement of operations for fiscal years 2023 and 2024.

*Expense Classification*

During fiscal years 2023 and 2024, within operating expenses certain supply and other expenses were presented as companyoperated store expenses. This error resulted in company-operated store expenses to be overstated for fiscal years 2023 and 2024 and an equal understatement of supply and other expenses in the corresponding periods. This error did not result in any change in total operating expenses.

*Other Errors*

In addition, other errors were identified that primarily relate to fiscal years 2023 or 2024 related to the income tax provision, supply and other revenue, fixed assets, cloud computing, lease cash application, and balance sheet and income statement misclassifications, as well as inappropriately recognized revenue in our ATI business primarily related to fiscal year 2025. The impact of these errors and the lease adjustments, cash adjustments, and expense classification described above will be reflected in the Company's Annual Report on Form 10-K for the fiscal year 2025.

106. In the same Current Report on Form 8-K, the Company acknowledged that management "identified material weaknesses in the Company's internal control over financial reporting resulting in the conclusion that our internal control over financial reporting and disclosure controls and procedures were not effective as of December 27, 2025."

107. Additionally, before markets opened that same day, Driven Brands filed another Current Report on Form 8-K informing investors that, due to the material errors requiring restatement of its prior financial statements, the Company would delay the release of its financial results for the fourth quarter of fiscal year 2025 and the related earnings call.

108. On this news, the price of Driven Brands common stock declined by $5.01 per share, or approximately 30%, falling from a closing price of $16.61 per share on February 24, 2026, to $11.60 per share on February 25, 2026.

109. Analysts responded promptly. For instance, BTIG analysts issued a report titled "Flash: Surprise Earnings Delay as Material Errors in Financial Reporting Emerge," noting that

the "fairly extensive list of issues is concerning and the disclosure that revenue was overstated while SG&A expenses were understated indicates meaningful P&L impact."

110. Likewise, Piper Sandler analysts downgraded Driven Brands's stock, lowered their price targets, and released a report titled "In the Penalty Box for a While," explaining that "[c]onsidering the 8K did not confirm revenue, adj. EBITDA or EPS figures, we assume there is risk that all three of those line items see changes in the FY23-25 restatements."

**D.      Defendants' Misconduct Has and Continues to Harm the Company**

111. As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

112. Driven Brands's reputation and goodwill have also been damaged by the Defendants' misconduct.

**E.      Driven Brands Issues False and Misleading Proxy Statements**

113. In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period, including the Schedule 14A Proxy Statements issued on March 29, 2023 (the "2023 Proxy"), March 27, 2024 (the "2024 Proxy"), April 10, 2025 (the "2025 Proxy") (collectively, the "False Proxies") that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

114. The Director Defendants drafted, approved, reviewed, and/or signed False Proxies before they were filed with the SEC and disseminated to Driven Brands's stockholders. The Director Defendants negligently issued materially misleading statements in the False Proxies.

These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the False Proxies allegations and related claims.

115. In support of re-electing themselves, Director Defendants highlighted their supposed oversight of the Company. The False Proxies stated:

**Our Board's Oversight of Risk**

Risk oversight is a critical aspect of the Company meeting its strategic objectives.

**BOARD OF DIRECTORS**
The Board of Directors executes its risk oversight responsibilities through active review and discussion of key risks facing the Company, including strategic risks, and by delegating certain risk oversight responsibilities to its committees, who regularly report back to the Board of Directors.

| AUDIT COMMITTEE | COMPENSATION COMMITTEE | NOMINATING & CORPORATE GOVERNANCE COMMITTEE |
|---|---|---|
| Oversees the management of financial risks, including accounting and financial reporting processes, internal controls and internal audit functions, the fraud risk assessment program, the enterprise risk management program, and other risk exposures, including data privacy and cybersecurity | Oversees the management of risks relating to the Company's compensation plans and arrangements | Oversees the management of risks related to the Company's corporate governance policies and practices and Board and executive-succession planning |

116. The False Proxies thus assured stockholders that the Director Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the

Company to make materially false and misleading statements and failed to disclose that: (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

117.    As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

**F.    The Board Breached its Fiduciary Duties**

118.    As officers and/or directors of Driven Brands, the Defendants owed Driven Brands fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Driven Brands in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Driven Brands, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

119.    Defendants, because of their positions of control and authority as directors and/or officers of Driven Brands, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Driven Brands's financial condition, performance, growth, operations, financial statements, business, management,

earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

120.     To discharge their duties, the officers and directors of Driven Brands were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Driven Brands were required to, among other things:

(a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b)     Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d)     Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or

practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f)     Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g)     Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

121.    The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

122.    The Board's Audit Committee is tasked with overseeing Driven Brands's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Driven Brands's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

> • to recommend to the Board of Directors whether the Company's annual audited financial statements should be included in our annual report on Form 10-K and prepare the annual audit committee report to be included in our annual proxy statement;
>
> • to oversee and monitor our financial reporting process;
>
> • to oversee and monitor the integrity of our financial statements and

internal control system;

• to be directly responsible for the appointment, retention, compensation, and oversight of the work of our independent registered public accounting firm;

• to oversee the independence of our independent registered public accounting firm;

• to review the activities, organizational structure and qualifications of the internal audit department, review and advise on the selection or removal of the head of internal audit, and annually review and recommend any changes to the internal audit charter;

• to discuss and oversee policies governing how senior management assesses and manages our risk exposure;

• to oversee and monitor our compliance with legal and regulatory matters; and

• to provide regular reports to the Board of Directors

123. In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Johnson, Puckett, Swinburn, and Stroup (the "Audit Committee Defendants") conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

124. In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the

market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

125. The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Driven Brands.

## DERIVATIVE ALLEGATIONS

126. Plaintiff brings this action derivatively in the right and for the benefit of Driven Brands to redress injuries suffered by Driven Brands as a direct result of the Director Defendants' breaches of fiduciary duty. Driven Brands is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

127. Plaintiff will adequately and fairly represent the interests of Driven Brands in enforcing and prosecuting the Company's rights.

128. Plaintiff was a stockholder of Driven Brands at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Driven Brands stockholder.

## DEMAND FUTILITY ALLEGATIONS

129. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation set forth as though fully set forth herein.

130. The Driven Brands Board currently has twelve members: Fitzpatrick, Rivera, Aronson, Halligan, Harmon, Hume, Johnson, Puckett, Stroup, Swinburn, Thompson, and Tomás.

131. Plaintiff has not made any demand on Driven Brands' current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

### A. Demand is Excused as to Defendant Fitzpatrick

132. Defendant Fitzpatrick serves as Non-Executive Chair of the Board.

133. Previously, he was Driven Brands President and Chief Executive Officer from July 2012 to May 2025. He served as a member of the board of directors since April 2018. Previously, he served as a member of the board of managers of Driven Investor LLC.

134. Defendant Fitzpatrick received compensation of $29,075,616 in 2023, and $7,655,784 in 2024.

135. Defendant Fitzpatrick served as a director of the Company during the Relevant Time Period. As a director, Defendant Fitzpatrick had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Fitzpatrick was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

136. Defendant Fitzpatrick failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the

public. By consciously disregarding the duty to monitor the Company's controls, Defendant Fitzpatrick failed to protect corporate assets.

137. Defendant Fitzpatrick was an active participant in the misconduct described above. Defendant Rivera made false and misleading statements concerning facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

138. Defendant Fitzpatrick therefore faces a substantial likelihood of liability.

139. Defendant Fitzpatrick is a named defendant in the Securities Class Action.

**B.     Demand is Excused as to Defendant Rivera**

140. Defendant Rivera is the Company's President and CEO. Defendant Rivera received compensation of $7,589,080 in 2023, and $2,631,334 in 2024. Defendant Rivera depends on the Company for his income. In addition, Driven Brands stated in the False Proxies (defined above) that Defendant Rivera is not independent pursuant to NYSE rules.

141. Defendant Rivera served as a director of the Company during the Relevant Time Period. As a director, Defendant Rivera had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Rivera was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

142. Defendant Rivera failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor the Company's controls, Defendant Rivera failed to protect corporate assets.

143. Defendant Rivera was an active participant in the misconduct described above. Defendant Rivera made false and misleading statements concerning facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

144. Defendant Rivera therefore faces a substantial likelihood of liability.

145. Defendant Rivera is a named defendant in the Securities Class Action.

**C. Demand is Excused as to Defendant Aronson**

146. Defendant Aronson served as a director of the Company during the Relevant Time Period. As a director, Defendant Aronson had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Aronson was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

147. Defendant Aronson failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By

consciously disregarding the duty to monitor Driven Brands' controls, Defendant Aronson failed to protect corporate assets.

148. Defendant Aronson therefore faces a substantial likelihood of liability.

149. Demand is Excused as to Defendant Aronson.

**D.  Demand is Excused as to Defendant Halligan**

150. Defendant Halligan served as a director of the Company during the Relevant Time Period. As a director, Defendant Halligan had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Halligan was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

151. Defendant Halligan earned compensation of $245,775 in 2024 in connection with her role as Company director.

152. Defendant Halligan failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Halligan failed to protect corporate assets.

153. Defendant Halligan therefore faces a substantial likelihood of liability.

154. Demand is excused as to Defendant Halligan.

**E.  Demand is Excused as to Defendant Harmon**

155. Defendant Harmon served as a director of the Company during the Relevant Time Period. As a director, Defendant Harmon had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations,

prospects, internal controls, and financial statements were accurate. Defendant Harmon was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

156. Defendant Harmon received compensation of $227,775 in 2024 in connection with his role as Company director.

157. Defendant Harmon failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Harmon failed to protect corporate assets.

158. Defendant Harmon therefore faces a substantial likelihood of liability.

159. Demand is excused as to Defendant Harmon.

**F.      Demand is Excused as to Defendant Hume**

160. Defendant Hume served as a director of the Company during the Relevant Time Period. As a director, Defendant Hume had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Hume was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

161. Defendant Hume failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Hume failed to protect corporate assets.

162. Defendant Hume therefore faces a substantial likelihood of liability.

163. Demand is excused as to Defendant Hume.

**G.     Demand is Excused as to Defendant Johnson**

164. Defendant Johnson served as a director of the Company during the Relevant Time Period. As a director, Defendant Johnson had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Johnson was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

165. Defendant Johnson failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Johnson failed to protect corporate assets.

166. Defendant Johnson served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for risk oversight and management. Defendant Johnson was responsible for knowingly or recklessly allowing the improper statements related to facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

167. In addition, as a member of the Audit Committee, Defendant Johnson knowingly or recklessly allowed the Company to issue the false statements during the Relevant Time Period.

Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Johnson knowingly or recklessly allowed the misconduct described above to occur. Defendant Johnson knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Johnson breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above.

168. Defendant Johnson therefore faces a substantial likelihood of liability.

169. Demand is excused as to Defendant Johnson.

**H. Demand is Excused as to Defendant Puckett**

170. Defendant Puckett served as a director of the Company during the Relevant Time Period. As a director, Defendant Puckett had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Puckett was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

171. Defendant Puckett received compensation of $244,775 in 2024 in connection with his role as Company director.

172. Defendant Puckett failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Puckett failed to protect corporate assets.

173. Defendant Puckett served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for risk oversight and management. Defendant Puckett

was responsible for knowingly or recklessly allowing the improper statements related to facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

174. In addition, as a member of the Audit Committee, Defendant Puckett knowingly or recklessly allowed the Company to issue false statements during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Puckett knowingly or recklessly allowed the misconduct described above to occur. Defendant Puckett knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Puckett breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above.

175. Defendant Puckett therefore faces a substantial likelihood of liability.

176. Demand is excused as to Defendant Puckett.

**I.      Demand is Excused as to Defendant Stroup**

177. Defendant Stroup served as a director of the Company during the Relevant Time Period. As a director, Defendant Stroup had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Stroup was also

required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

178. Defendant Stroup received compensation of $237,775 in 2024 in connection with her role as Company director.

179. Defendant Stroup failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Stroup failed to protect corporate assets.

180. Defendant Stroup served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for risk oversight and management. Defendant Stroup was thus responsible for knowingly or recklessly allowing the improper statements related to facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

181. In addition, as a member of the Audit Committee, Defendant Stroup knowingly or recklessly allowed the Company to issue false statements during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Stroup knowingly or recklessly allowed the misconduct described above to occur. Defendant Stroup knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly,

Defendant Stroup breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above.

182. Defendant Stroup therefore faces a substantial likelihood of liability.

183. Demand is excused as to Defendant Stroup.

**J.     Demand is Excused as to Defendant Swinburn**

184. Defendant Swinburn served as a director of the Company during the Relevant Time Period. As a director, Defendant Swinburn had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Swinburn was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

185. Defendant Swinburn received compensation of $244,775 in connection with his role as Company director.

186. Defendant Swinburn failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Swinburn failed to protect corporate assets.

187. Defendant Swinburn served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for risk oversight and management. Defendant Swinburn was thus responsible for knowingly or recklessly allowing the improper statements related to facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those

financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

188. In addition, as a member of the Audit Committee, Defendant Swinburn knowingly or recklessly allowed the Company to issue false statements during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Swinburn knowingly or recklessly allowed the misconduct described above to occur. Defendant Swinburn knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Swinburn breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above.

189. Defendant Swinburn therefore faces a substantial likelihood of liability.

190. Demand is excused as to Defendant Swinburn.

### K. Demand is Excused as to Defendant Thompson

191. Defendant Thompson served as a director of the Company during the Relevant Time Period. As a director, Defendant Thompson had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Thompson was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

192. Defendant Thompson failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Thompson failed to protect corporate assets.

193. Defendant Thompson therefore faces a substantial likelihood of liability.

194. Demand is excused as to Defendant Thompson.

**L.      Demand is Excused as to Defendant Tomás**

195. Defendant Tomás served as a director of the Company during the Relevant Time Period. As a director, Defendant Tomás had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Tomás was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

196. Defendant Tomás received $233,775 in compensation in connection with his role as Company director.

197. Defendant Tomás failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Driven Brands' controls, Defendant Tomás failed to protect corporate assets.

198. Defendant Tomás therefore faces a substantial likelihood of liability.

199. Demand is excused as to Defendant Tomás.

**M.      Demand is Excused as to Defendant Beland**

200. Defendant Beland served as Driven Brands' CAO at all relevant times until his departure from the Company on January 3, 2025.

201. Defendant Beland received compensation of $597,082 in 2024. Defendant Beland depends on Driven Brands for his income. In addition, the Company stated in the False Proxies that Defendant Beland is not independent pursuant to NYSE rules.

202. Defendant Beland was an active participant in the misconduct described above. Defendant Beland made false and misleading statements concerning facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. Defendant Beland therefore faces a substantial likelihood of liability.

203. Defendant Beland is a named defendant in the Securities Class Action. Thus, Defendant Beland faces a substantial likelihood of liability.

**N. Demand is Excused as to Defendant Ferrera**

204. Defendant Ferrera served as Driven Brands' CFO from May 10, 2023, until his departure on May 8, 2024.

205. Defendant Ferrera received compensation of $4,728,890 in 2024 and $2,233,170 in 2023. Defendant Ferrera depends on Driven Brands for his income. In addition, the Company stated in the False Proxies that Defendant Ferrera is not independent pursuant to NYSE rules.

206. Defendant Ferrera was an active participant in the misconduct described above. Defendant Ferrera made false and misleading statements concerning facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. Defendant Ferrera therefore faces a substantial likelihood of liability.

207. Defendant Ferrera is a named defendant in the Securities Class Action. Thus, Defendant Ferrera faces a substantial likelihood of liability.

## O. Demand is Excused as to Defendant Diamond

208. Defendant Diamond served as Driven Brands' CFO since August 9, 2024.

209. Defendant Diamond received compensation of $4,478,569 in 2024. Defendant Diamond depends on Driven Brands for his income. In addition, the Company stated in the False Proxies that Defendant Diamond is not independent pursuant to NYSE rules.

210. Defendant Diamond was an active participant in the misconduct described above. Defendant Diamond made false and misleading statements concerning facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading

and/or lacked a reasonable basis at all relevant times. Defendant Diamond therefore faces a substantial likelihood of liability.

211.    Defendant Diamond is a named defendant in the Securities Class Action. Thus, Defendant Diamond faces a substantial likelihood of liability.

P.    **Demand is Excused as to Defendant Fondell**

212.    Defendant Fondell has served as Driven Brands' CAO since May 9, 2025.

213.    Defendant Fondell depends on Driven Brands for his income. In addition, the Company stated in the False Proxies that Defendant Fondell is not independent pursuant to NYSE rules.

214.    Defendant Fondell was an active participant in the misconduct described above. Defendant Fondell made false and misleading statements concerning facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. Defendant Fondell therefore faces a substantial likelihood of liability.

215.    Defendant Fondell is a named defendant in the Securities Class Action. Thus, Defendant Fondell faces a substantial likelihood of liability.

**CLAIMS FOR RELIEF**

**COUNT I**
**Breach of Fiduciary Duty**
**(Derivatively Against The Director Defendants)**

216. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

217. Each of the Defendants owed and owes Driven Brands the highest obligations of loyalty, good faith, due care, and oversight.

218. Each of the Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

219. The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

220. In addition, the Director Defendants further breached their fiduciary duties owed to Driven Brands by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that facts that (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

221. The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

222. As a direct and proximate result of the breaches of duty alleged herein, Driven Brands has sustained and will sustain significant damages.

223. As a result of the misconduct alleged herein, these Defendants are liable to the Company.

224. Plaintiff, on behalf of Driven Brands, has no adequate remedy at law.

**COUNT II**
**Breach of Fiduciary Duty**
**(Derivatively Against the Officer Defendants)**

225. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

226. The Officer Defendants are executive officers of the Company. As executive officers, The Officer Defendants owed and owe Driven Brands the highest obligations of loyalty, good faith, due care, oversight, and candor.

227. The Officer Defendants breached their fiduciary duties owed to Driven Brands by willfully or recklessly making and/or causing the Company to make false and misleading

statements and omissions of material fact, failing to disclose that: (1) the Company had material weaknesses in its internal controls over financial reporting; (2) as a result, Driven Brands's financial statements for fiscal years 2023 and 2024, as well as the first three quarters of fiscal 2023, contained material errors; (3) consequently, those financial statements were unreliable and would need to be restated; and (4) in light of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

228. The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

229. As a direct and proximate result of the breaches of duty alleged herein, Driven Brands has sustained and will sustain significant damages.

230. As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

231. Plaintiff, on behalf of Driven Brands, has no adequate remedy at law.

**COUNT III**
**Violation of Section 14(a) of the Exchange Act**
**(Against The Director Defendants)**

232. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

233. The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any

allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

234.    The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the False Proxies. In the False Proxies, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

235.    The False Proxies, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Driven Brands misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

236.    Plaintiff, on behalf of Driven Brands, thereby seeks relief for damages inflicted upon the Company based upon the misleading False Proxies in connection with the improper reelection of the Director Defendants to the Board.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Driven Brands and that Plaintiff is a proper and adequate representative of the Company;

B.    Against all of the Defendants and in favor of Driven Brands for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C.    Granting appropriate equitable relief to remedy the Defendants' breaches of

fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D.   Awarding Driven Brands restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 17, 2026

/s/ David M. Wilkerson
David M. Wilkerson
N.C. State Bar No.: 35742
**WILKERSON JUSTUS PLLC**
9 SW Pack Square, Suite 301
Asheville, NC 28801
Phone: (828) 316-6902
dwilkerson@wilkersonjustus.com

**BRIAN MURRAY LAW PLLC**
Brian Murray, Esq.
750 E. Main Street, Suite 620
Stamford, CT 06902
Phone: (203) 883-2170
bmurray@brianmurraylaw.com

**ROWLEY LAW PLLC**
Shane T. Rowley, Esq.
Danielle Rowland Lindahl, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Fax: (914) 301-3514
srowley@rowleylawpllc.com
drl@rowleylawpllc.com